**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DENNIS NELSON a/k/a DAVID JOHNNY CASH,

                      Plaintiff,

v.                                           No. 10-CV-1280
                                                        (MAD/CFH)

BRIAN HILTON, Dep. of RMHU, Marcy Correctional Facility,

                      Defendant[1].

---

**APPEARANCES:**                               **OF COUNSEL:**

DENNIS NELSON
Plaintiff Pro Se
94-B-0694
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN           MICHAEL G. McCARTIN, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Dennis Nelson ("Nelson"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant, a DOCCS deputy superintendent,

---

    [1] Two other defendants were dismissed without prejudice from the current complaint pursuant to a Decision and Order dated March 21, 2011. Dkt. No. 7.

    [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending are defendant's motions for revocation of Nelson's in forma pauperis ("IFP") status pursuant to 28 U.S.C. § 1915 and summary judgment pursuant to Fed. R. Civ. P. 56.[3] Dkt. No. 30. Nelson opposes both motions. Dkt. No. 34. For the reasons which follow, it is recommended that defendant's motions be granted.

# I. Background

## A. Facts

The facts are related herein in the light most favorable to Nelson as the non-moving party. See subsection II(A) infra.

Nelson was housed at the Marcy Correctional Facility ("Marcy") Regional Mental Health Unit ("RHMU"), specifically the infirmary, from May 13, 2010 through December 30, 2010. Hilton Decl. (Dkt. No. 30-4) ¶ 5; Nelson Dep. (Dkt. No. 30-3) at 18. Hilton was the Deputy Superintendent of the RMHU. Hilton Dep. ¶ 1. Nelson testified that the medical conditions causing him to be housed in the infirmary were an infected leg, a seizure disorder, and diabetes. Nelson Dep. at 18-19. Nelson contends that while he was housed at Marcy, Hilton interfered with the medical treatment provided to his left leg, caused by Nelson's diabetes and blood clots. Compl. at 3. Specifically, Nelson states that Hilton told him he was unable to stay in his cell throughout the day and was instead required to weight bear and attend programming against medical orders. Compl. at 4.

---

[3] While defendant files one motion, pursuant to Fed. R. Civ. P. 56 (Dkt. No. 30-6), within it defendant also asserts revocation of IFP status pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 30-6 at 3-5).

2

Hilton states that while Nelson was at Marcy, he was never forced to participate in programming in violation of a medical order. Hilton Decl. ¶¶ 6, 10. Conversely,

> each morning before programming, [Nelson] would be taken to the medical staff where [his] leg wound would be cleaned and re-dressed. This would be repeated later in the day before [Nelson's] afternoon programming. Furthermore . . . leg irons would not be placed upon the leg which had the wound [and Nelson] was . . . moved separately from the other inmates . . . There was also a period when [Nelson] was receiving special baths . . . to help his leg wound to heal.

Hilton Decl. ¶¶ 6-7. It is undisputed that Nelson would tamper with his leg wound, by rubbing feces into it, to purposefully cause infection and prevent it from healing. Hilton Decl. ¶¶ 8-9; Nelson Dep. (Dkt. No. 30-3) at 18-19; Dkt. No. 34 ¶ 1. In his opposition to the present motion, Nelson contends that he did not rub feces into his ulcerated leg while he was at Marcy. Dkt. No. 34 ¶ 2. However, Nelson testified that he rubbed feces in his leg wound up until six months prior to his deposition, held on September 29, 2011. Nelson Dep. at 19. This abstention began three months subsequent to the termination of his placement at Marcy.[4] Hilton Decl. ¶¶ 5, 9.

Nelson's motion to proceed in forma pauperis ("IFP") has been granted. Dkt. No. 7. In that order, Nelson's active litigation history was discussed. Dkt. No. 7 at 3. The Court also determined that, in light of Chavis v. Chappius, 618 F.3d 162 (2d Cir. 2010), Nelson had, at this preliminary stage, established imminent danger when he was forced to engage in programming activities in contravention of a medical order. Dkt. No. 7 at 4. However, the

---

[4] Nelson was transferred from Marcy because he threw urine into a staff member's face. Hilton Dep. ¶ 5. This was the second such occurrence for Nelson during his tenure there. Id.; see also Nelson Dep. at 16-17 (explaining, while not specifically identifying who or where it occurred, that his most recent felony was for throwing bodily fluids on a nurse in a corrections facility).

3

Court also stressed that "Nelson's [IFP] status will be revoked if, as the case progresses, the Court concludes that he did not face imminent danger of serious physical injury when he commenced this action or if otherwise not entitled to proceed [IFP]." Dkt. No. 7 at 5-6.

Defendant filed the present motion. Dkt. No. 30. Nelson opposed the motion in a three-page document which refuted defendant's contentions about interference with his treatment and stated that "yes the defendant interfarred [sic] on [his] medical treatment by telling [him] to refuse treatment and go to program." Dkt. No. 34 ¶ 2. Nelson also contends that defendant was lying which he could prove through an unidentified witness. Id. ¶ 3. Lastly, in a postscript, Nelson contends that he is "under imminent danger of serious physical injury that [his] leg smells like a dead body [and] also have MERCA [sic] . . . ." Id. at 3.

### B. Prior Lawsuits

It appears that Nelson has filed seventy other actions in the federal courts of New York since the commencement of his incarceration. See PACER Case Locator (visited Oct. 9, 2012), https://pcl.uscourts.gov/view?rid=iL4IyecQWq3TTgK5Sg1LL2P0ArXHHE1IweZnctr8&page=1. More than one of those actions have concerned the ongoing issues with Nelson's ulcerated leg. Prior to filing the present lawsuit, decisions in this district outlined Nelson's litigation history and revoked his IFP status. See Nelson v. Spitzer, No. 07-CV-1241, 2008 WL 268215, at *1 (N.D.N.Y. Jan. 29, 2008) ("A review of [Nelson's] prior proceedings reveals that [Nelson] does have three 'strikes' and, thus, should not be permitted to proceed with his action [IFP].") (citations omitted) (Dkt. No. 30-7 at 1-5); Nelson v. NeSmith, No. 06-CV-117, 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) ("A detailed analysis of

4

[Nelson's] prior litigation history, however, is unnecessary given prior findings by both the Western District of New York and this court, to the effect that while confined as a New York State prison inmate [Nelson] has filed at least three prior civil rights complaints dismissed for lack of merit.") (citations omitted) (Dkt. No. 30-7 at 6-12); Nelson v. Lee, No. 05-CV-1096, 2007 WL 4333776, at *5 (N.D.N.Y. Dec. 5, 2007) (concluding that, based upon a prior decision filed in the Western District of New York in 2004, Nelson has already acquired three strikes and that defendants need not independently establish that strikes previously occurred) (Dkt. No. 30-7 at 13-19). Accordingly, the three strikes bar may be applicable.

## II. Discussion

Nelson claims that his Eighth Amendment rights were violated when Hilton interfered with his medical treatment by forcing him to attend programming in contravention of medical directives. Defendant contends that there is no merit to Nelson's claim and that, in the alternative, the claim should be conditionally dismissed because of the "three strikes" provision until Nelson can remit the appropriate filing fee.

### A. Fed. R. Civ. P. 56

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the

5

case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### 1. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. Eighth Amendment obligations include the duty to

6

protect prisoners from other known harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted). It also includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer, 511 U.S. at 834. Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson, 503 U.S. at 9). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance v. Armstrong, 143 F.3d 698,

7

702 (2d Cir. 1998). Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Nelson contended that Hilton interfered with his medical treatment by forcing him to participate in programming in contravention of medical orders. First, all Nelson has proffered are unsupported, conclusory allegations that Hilton interfered with medical treatment. Nelson fails to identify what programming he was forced to attend, when he was forced to attend it, and the frequency and duration of the programming, as well as failing to produce any of the relevant medical orders which were allegedly violated. This is insufficient to survive defendants motion. See Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (internal quotation marks and citations omitted).

Moreover, Hilton refutes such contentions in his declaration where he explains that during the morning programming, Nelson was not sent to programming at all. Instead, Nelson was in the infirmary undergoing dressing changes for his wound. Moreover, Nelson was provided with special baths and other individual accommodations regarding his transfer and movement throughout the facility given his leg wound. The provision of consistent,

8

daily treatment diminishes allegations of deliberate indifference.  Thus, Nelson's unsupported assertions together with Hilton's uncontested proffers about the treatment which Nelson was provided fail to raise a question of material fact regarding Hilton's alleged deliberate indifference.

Second, although primarily relied upon in his complaint as the cause of his serious medical condition, Nelson fails to identify blood clots as one of the diagnoses responsible for his permanent placement in the infirmary.  Additionally, while also primarily relied upon in the complaint as the cause of his serious medical condition, during Nelson's deposition he mentions his diagnosis of diabetes almost as an afterthought.  The medical condition which Nelson emphasized in his deposition as being the main reason for his permanent placement in the infirmary still continued to be his ulcerated and infected leg.  Assuming that is actually the serious medical condition which Nelson alleges, the care which was provided to Nelson, as described above, was both adequate and appropriate which is all that is constitutionally mandated.  Chance, 143 F.3d at 703.  Hilton and his staff provided appropriate daily wound care which was delayed only by Nelson's own actions.

To the extent that this delay could be construed as deliberate indifference, such contentions are meritless.  Nelson's own self-mutilating behaviors which were responsible for his prolonged infection have been found to be a basis for defeating claims of deliberate indifference.  Nelson v. Scoggy, No. 06-CV-1146 (NAM/DRH), 2009 WL 5216955, at *4 (N.D.N.Y. Dec. 30, 2009) ("Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.") (Dkt. No. 30-7 at 36).[5]

---

[5] In the alternative, defendant also raises the broader affirmative defense of collateral estoppel to preclude reexamination of the deliberate indifference claim regarding Nelson's wounded leg.  Assuming that, liberally reading his complaint, Nelson also

9

While Nelson attempts to create an issue of fact by contending in his opposition that he never engaged in self-mutilation while in Marcy, his deposition testimony indicates that his self-control was not in place until months after he was transferred from the Marcy infirmary. Such proffers are insufficient to defeat the present motion. See Guarino v. St. John Fisher College, 553 F. Supp. 2d 252, 259 (W.D.N.Y. 2008) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (internal quotation marks and citations omitted) aff'd 321 Fed. Appx. 55 (2d Cir. 2009). Moreover, Hilton also confirmed that this self-mutilating behavior occurred during Nelson's incarceration at Marcy. Accordingly, to the extent that Nelson's claims could be construed as alleging deliberate indifference regarding the medical treatment for his leg wound, such claims are insufficient

---

attempted to raise allegations surrounding the care provided to his leg collateral estoppel would establish that Nelson's self-mutilating behavior mitigates against contentions of deliberate indifference.

"Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen, 449 U.S. at 94 (1980). Collateral estoppel is applicable:

> [I]f (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom . . . preclusion is sought has a full and fair opportunity to contest the decision. . .; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted). The requirement of a full and fair opportunity to contest requires that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as asserted in the present case. LaFleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002).

In this case, there was a final determination on the merits in Nelson v. Scoggy, dismissing the case with prejudice. In that case, Nelson had a full and fair opportunity to contest the decision, participating in the litigation and pending motion practice. Lastly, the issue of Nelson's self-mutilating behavior was also squarely in consideration in the present case when evaluating whether Nelson was responsible for the perpetuation of his imminent danger and serious medical condition.

to withstand defendant's present motion.

## 2. Qualified Immunity

Defendant claims that even if Nelson's constitutional claims are substantiated, he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be discussed with regard to Nelson's claims because, as discussed supra, it has not been shown that defendant violated Nelson's constitutional rights.

## B. 28 U.S.C. § 1915(g)

Defendant seeks revocation of Nelson's IFP status under 28 U.S.C. § 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. See 28 U.S.C. § 1915(g) (2006).[6] Frivolous claims "lack[] an arguable basis either in law or in fact." Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). Malicious claims are filed with the intent to hurt or harm another. Id. (citations omitted). The failure to state a claim applies a parallel definition from Fed. R. Civ. P. 12(b)(6), but "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." Neitzke, 490 U.S. at 326; see also Tafari, 473 F.3d at 442 (citations omitted).

This "three-strikes" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); see also Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002) (applying imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.'") In determining whether the imminent danger provision applies, the court must evaluate whether the claimed danger was still in existence when a complaint was filed and whether such danger was sufficiently serious in light of the liberal standards accorded to pro se plaintiffs to require protection. Chavis v. Chappius, 618 F.3d 162, 169-70 (2d Cir. 2010)

---

[6] The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1995), which had as its principal purpose deterring frivolous prisoner litigation. Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir. 1997).

12

(citations omitted). Thus, vague, conclusory, non-specific or implausible allegations of imminent danger are insufficient to circumvent the three-strikes bar. Id. at 170 (citations omitted). Additionally, dismissal is not precluded by the fact that Nelson has already been granted IFP status in this action. Dkt No. 7. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). See McFadden v. Parpan, 16 F. Supp. 2d 246, 247 (E.D.N.Y. 1998).

As previously determined in this district, the three-strikes rule applies to Nelson's filings. Thus, it must be determined whether Nelson has sufficiently pled a condition which satisfies the imminent danger exception.

It is unclear from all of the present submissions in the current motion what Nelson is actually relying upon as the root cause of the imminent danger. Nelson first contends, in his complaint, that he was subjected to imminent danger when Hilton required him to go to programming, instead of convalescing in his cell, in contravention of medical orders. Such claims can be proven, Nelson contends, by testimony from an unidentified witness. Such claims are insufficient to establish imminent danger. "[U]nsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." Merriweather v. Reynolds, 586 F. Supp. 2d 548, 552 (D.S.C. 2008) (citations omitted); see also Hafed v. Federal Bureau of Prisons, 635 F.3d 1172, 1180 (10th Cir. 2011) (holding that, when claiming imminent danger based upon medical care, the plaintiff must "make a specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion . . . .") (internal quotation marks and citations omitted); Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

13

2010) (A court may find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'") (citations omitted); Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (holding that "general assertions [are] insufficient to invoke the [imminent danger] exception . . . absent specific fact[ual] allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing a likelihood of imminent physical injury.") (citations omitted).

Nelson has failed to allege any specific, factual evidence regarding the date, time, duration, or frequency of Hilton's alleged instances of interference. Moreover, Nelson has failed to produce any evidence of a medical excuse outlining his inability to program. Hilton contends that he never required Nelson to attend programming in violation of any medical orders. Moreover, Hilton specifically outlined the steps taken by medical staff to treat Nelson during the day while programming activities were occurring elsewhere. Instead of having his medical treatment interfered with, Nelson underwent twice daily dressing changes and, for a time, special baths for his leg wound in lieu of attending programming. The provision of such care diminishes claims of imminent danger.

During Nelson's deposition, he listed the conditions which required his placement in the infirmary. Specifically, he stated that he "ha[s] a []hole in [his] leg; infection with gangrene because [he] like[s] rubbing [feces] in it. [He] also ha[s] a seizure disorder[ and he's] a diabetic on top of it." Nelson Dep. at 19.[7] Additionally, in his opposition, Nelson again seemed to return to his leg infection, stating in a postscript that he was in imminent danger because his leg smells like a dead body. To the extent that Nelson relies upon the infection

---

[7] Nelson testified that he receives approximately seven medications a day, including pills for his seizure disorder and finger sticks for his diabetes. Nelson Dep. at 7-9.

in his leg to establish imminent danger, such proffers have been found insufficient to establish such in this district. See Nelson v. Warren, No. 10-CV-990 (GTS/DRH), 2011 WL 7445581, at *4 (N.D.N.Y. Dec. 12, 2011) aff'd 2012 WL 685755 (N.D.N.Y. Mar. 2, 2012) (Dkt. No. 30-7 at 20, 29-30) (citing Nelson v. Scoggy, No. 06-CV-1146 (NAM/DRH), 2009 WL 5216955, at *2-4 (N.D.N.Y. Dec. 30, 2009) (dismissing the case since Nelson had received adequate medical care for his leg and the failure of the wound to heal was the result of Nelson's own acts of interference with the treatment provided and his self-mutilation) (Dkt. No. 30-7 at 32-38)). Any complaints of inadequate care have already been deemed deficient when evaluating whether Nelson can escape the three-strikes provision.

Lastly, also asserted in the postscript of his opposition, Nelson contends for the first time that he is facing imminent danger due to the contraction of MRSA in his entire body. Nelson's opposition was filed on May 8, 2012, almost a year and a half after he was transferred from Marcy. For the same reason these "late-blossoming allegations" were denied in Nelson v. Warren, namely that they "ar[o]se from a condition experienced nearly seventeen months after the date of filing of [Nelson's] complaint . . . they would not plausibly suggest that [Nelson] was in imminent danger or serious physical injury on [the date the complaint was filed]." 2012 WL 685755, at *3 (Dkt. No. 30-7 at 23-24); see also Chavis, 618 F.3d at 169-70.

Accordingly, for those conditions which have not already been deemed insufficient to establish imminent danger by this district, Nelson has failed to provide anything more than vague, conclusory generalizations. There thus exists " no basis for evaluating the imminence or dangerousness of the threat . . . Moreover, unless we require prisoners to demonstrate the actual existence of an imminent threat, otherwise disqualified filers could

15

obtain IFP status simply by adding general allegations of endangerment." Mitchell v. Federal Bureau of Prisons, 587 F.3d 415, 421 (C.A.D.C. 2009). As Nelson has failed to plead his case with the specificity required to trigger the three-strikes safety valve, the imminent danger exception does not apply.

Accordingly, defendant's motion to dismiss conditionally based upon the three-strikes rule should be granted and Nelson's IFP status should be revoked.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 30) be **GRANTED** and the complaint **DISMISSED** as to all claims.

In the alternative, if the prior recommendation is not adopted, for the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 30) be **GRANTED** and that:

    1. The order granting Nelson's IFP Status (Dkt. No.7) be **VACATED**;

    2. The complaint be **DISMISSED** as to all claims <u>unless</u> Nelson pays the filing fee of $350.00 within thirty (30) days of the entry of a final order by the district court; and

    3. Nelson be **BARRED** from filing any IFP complaints in this district unless he is under imminent danger of serious physical injury.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: October 9, 2012
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge